**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Criminal Nos. 12-262; 15-63 |
| | ) | |
| JAMES HATZIMBES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**CONTI, Senior District Judge.**

**I.      Introduction**

Pending before the court is a motion for early termination of supervised release filed by defendant James Hatzimbes ("Hatzimbes") in criminal action numbers 12-262 and 15-63. (Crim. Action No. 12-262, ECF No. 562; Crim. Action No. 15-63, ECF No. 191.) Hatzimbes argues that his term of supervised release should be terminated because he has abided by all conditions of supervised release, made restitution payments, and maintained employment. (Crim. Action No. 12-262, ECF No. 562 ¶¶ 4, 5 ,8; Crim. Action No. 15-63, ECF No. 191 ¶¶ 4, 5 ,8.) The government responded to Hatzimbes' motion arguing, among other things, that early termination of Hatzimbes' term of supervised release is not in the interest of justice or warranted by the factors set forth in 18 U.S.C. § 3553(a). (Crim. Action No. 12-262, ECF No. 564 ¶¶ 4, 5 ,8; Crim. Action No. 15-63, ECF No. 192 ¶¶ 4, 5 ,8.) For the reasons set forth in this opinion, including the court's consideration of the factors set forth in 18 U.S.C. § 3553(a), Hatzimbes' motion for early termination of supervised release will be denied without prejudice.

**II.      Procedural History**

On January 9, 2017, Hatzimbes pleaded guilty to:

-   **<u>count 2</u>** of the indictment at criminal action number 12-262, i.e., distributing controlled substance—anabolic steroids, on November 9, 2010, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E) and 18 U.S.C. § 2;

-   **<u>count 3</u>** of the indictment at criminal action number 12-262, i.e., distributing controlled substance—anabolic steroids, on February 17, 2011, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E) and 18 U.S.C. § 2;

-   **<u>count 4</u>** of the indictment at criminal action number 12-262, i.e., conspiracy to unlawfully distribute human growth hormone, from in or about September 2007 through on or about March 31, 2011, in violation of 18 U.S.C. § 371;

-   **<u>count 1</u>** of the indictment at criminal action number 15-63, i.e., conspiracy to commit mail fraud and health care fraud, from in or around January 2007, and continuing until at least approximately through December 2012, in violation of 18 U.S.C. § 1349;

-   **<u>count 14</u>** of the indictment at criminal action number 15-63, i.e., engaging in monetary transactions in property derived from criminal activity, on or about July 9, 2011, in violation of 18 U.S.C. § 1957;

-   **<u>count 15</u>** of the indictment at criminal action number 15-63, i.e., engaging in monetary transactions in property derived from criminal activity, on August 19, 2011, in violation of 18 U.S.C. § 1957; and

-   **<u>count 16</u>** of the indictment at criminal action number 15-63, i.e., engaging in monetary transactions in property derived from criminal activity, from July 12, 2011, through December 8, 2010, in violation of 18 U.S.C. § 1957.

(Crim. Action No. 12-262, ECF Nos. 1, 2, 367; Crim. Action No. 15-63, ECF Nos. 1, 2, and 106.)

On August 25, 2017, this court sentenced Hatzimbes to a term of imprisonment of fourteen months at each of counts 2, 3, and 4 of the indictment at criminal action number 12-262, and fourteen months at counts 1, 14, 15, and 16 of the indictment at

criminal action number 15-63, all to concurrently run, for a total term of imprisonment of fourteen months. (Crim. Action No. 12-262, ECF No. 528; Crim. Action No. 15-63, ECF No. 153.) The court imposed upon Hatzimbes a term of supervised release of three years at each of the foregoing counts in each case, to concurrently run, for a total term of supervised release of three years. (Id.) The court ordered Hatzimbes to pay restitution jointly and severally with his codefendants in the amount of $2,566,505.96. The government reports, and Hatzimbes does not contest, that $2,346,263.21 remains outstanding on his restitution obligation.

On October 5, 2018, Hatzimbes completed his fourteen-month term of imprisonment and was released from the custody of the Federal Bureau of Prisons to commence his three-year-term of supervised release. (Crim. Action No. 12-262, ECF No. 562 ¶ 2; Crim. Action No. 15-63, ECF No. 191 ¶ 2.) Thus, Hatzimbes has completed two years of his three-year-term of supervised release.

On September 22, 2020, Hatzimbes filed in each of his cases the motion for early termination of his term of supervised release. The government filed a response in opposition to the motion. (Crim. Action No. 12-262, ECF No. 564; Crim. Action No. 15-63, ECF No. 192.) Hatzimbes' motion having been fully briefed is now ripe to be decided by the court.

III.    **Discussion**

A. **Applicable Law**

A district court has the discretion to grant the early termination of a defendant's

term of supervised release[1] under 18 U.S.C. § 3583(e). United States v. Melvin, No.

20-1158, 2020 WL 6108619, at *3 (3d Cir. Oct. 16, 2020). Pursuant to § 3583(e):

> [t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> > (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). As specified in § 3583(e)(1), in exercising its discretion, the

district court must consider the following factors:

– the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

– the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

– the sentencing range established by the Sentencing Commission, § 3553(a)(4);

– any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

– the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

– the need to provide restitution to any victims of the offense, § 3553(a)(7).

---

[1]     Supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)." Pepper v. United States, 562 U.S. 476, 502 n. 15 (2011).  It "fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000).

"After considering these factors, the court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." <u>Melvin</u>, 2020 WL 6108619, at *3. District courts need not make specific findings of fact with respect to each § 3553(a) factor; it is sufficient for the court to state that it considered the statutory factors.  <u>Id.</u>

The Third Circuit Court of Appeals recently clarified that the *general rule* is that early termination of a term of supervised release under § 3583(e)(1) "will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." <u>Id.</u> (quoting <u>United States v. Davies</u>, 746 F. App'x 86, 89 (3d Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 1275, 203 L. Ed. 2d 280 (2019)). The court of appeals in <u>Melvin</u> explained:

> That is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.

<u>Id.</u> The court of appeals, however, "disavow[ed] any suggestion that new or unforeseen circumstances ***must*** be shown." <u>Id.</u> (emphasis added).[2] In other words, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)."  <u>Id.</u> The district court must be "satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." <u>Id.</u> (quoting 18 U.S.C. § 3583(e)(1)).

---

[2]     The court of appeals explained that the language in <u>United States v. Laine</u>, 404 F. App'x 571, 573-74 (3d Cir. 2010), that "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it," is not based upon the statute and is not binding precedent.  <u>Melvin</u>, 2020 WL 6108619 at *3.

The court will consider the pertinent factors set forth in § 3553(a) as instructed in § 3583(e)(1) to determine whether early termination of Hatzimbes' term of supervised release is warranted by his conduct and in the interest of justice.

**B. Section 3553(a) Factors**

**1. The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)**

As the court acknowledged at the time of sentencing, Hatzimbes' crimes were serious and caused *significant* financial harm in excess of $2 million. With respect to the offenses charged in criminal action number 12-262, and, as detailed fully in the Presentence Investigation Report ("PIR"), on two separate occasions, Hatzimbes aided and abetted his codefendant, Richard A. Rydze ("Rydze"), to intentionally and knowingly distribute Testosterone Cypionate and Pregnenolone, Schedule III controlled substances, outside the scope of professional practice and not for a legitimate medical purpose. (PIR ¶ 28.) Hatzimbes conspired with Rydze to knowingly distribute and possess with the intent to distribute human growth hormone, for a use in humans other than the treatment of a disease or other recognized medical condition. (Id. ¶ 29.) Hatzimbes financially profited from his illegal activities with Rydze. (Id. ¶¶ 34-36.)

With respect to the offenses charged in criminal action number 15-63, and, as detailed fully in the PIR, Hatzimbes and his codefendant conspired to commit health care fraud and mail fraud. As a result of the conspiracy, Hatzimbes and his codefendants caused the submission of approximately $7.6 million in false and fraudulent claims for electrodes to the insurance company-victims and caused the insurance-company victims to pay through mailed checks approximately $3.9 million as the result of the submission of false and fraudulent claims for electrodes. The

government conservatively estimated that the loss amount caused by the conspiracy was $2.6 million. With respect to counts 14, 15, and 16, Hatzimbes made money transfers of money obtained via the health care fraud and mail fraud.

As this court explained at the time of Hatzimbes' sentencing, he had no criminal history, had a large support system, and was shown to be a caring person who has done numerous good acts for others. Hatzimbes provides in his motion that he has abided by all conditions of his supervised release and is employed.

Based upon the information presented to this court, Hatzimbes has led a law-abiding life since his release from imprisonment. The serious nature of his crimes, including the substantial monetary loss caused by his crimes, however, weighs against the early termination of his supervised release.

> ### 2. The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, §§ 3553(a)(2)(B)-(D)

Hatzimbes' serious criminal conduct warranted a significant term of supervised release because of the significant variance granted to him with respect to his term of imprisonment. The applicable sentencing range for Hatzimbes' term of imprisonment in both cases was 57 months to 71 months. The applicable sentencing range for a term of supervised release in criminal action number 12-262 was 2 years to 4 years. The applicable sentencing range for a term of supervised release in criminal action number 15-63 was 1 year to 3 years. The court granted Hatzimbes a significant variance with respect to the term of imprisonment. It, therefore, imposed upon Hatzimbes a term of supervised release in the middle of the range with respect to criminal action number 12-

262 and at the high-end of the range in criminal action number 15-63. Hatzimbes

caused a large amount of loss, i.e., in excess of $2 million, and financially benefited

from his criminal activities. Under those circumstances, a significant term of supervised

release is still warranted in this case to deter others from partaking in lucrative criminal

activity like Hatzimbes.

### 3. The sentencing range established by the Sentencing Commission, § 3553(a)(4)

As discussed above, the court granted Hatzimbes a significant variance with

respect to the terms of imprisonment imposed upon him. The court sentenced him to a

term of supervised release in the middle of the range at criminal action number 12-262

and at the high-end of the range in criminal action number 15-63. The term of

supervised release of three years was necessary because of, among other things, the

significant variance granted to Hatzimbes with respect to his terms of imprisonment and

the need to deter others from partaking in similar criminal activity.

### 4. Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5).

No pertinent policy statements were raised by the parties with respect to this

matter.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

There is no evidence that Hatzimbes' term of supervised release should be

terminated to avoid unwarranted sentencing disparities among defendants with similar

records who have been found guilty of similar conduct.

### 6. The need to provide restitution to any victims of the offense, § 3553(a)(7).

Hatzimbes' restitution obligation remains outstanding in the amount of $2,346,263.21. He reports to the court that he has made "regular routine and steady payments on his restitution." (Crim. Action No. 12-262, ECF No. 562 ¶ 8; Crim. Action No. 15-63, ECF No. 191 ¶ 8.) The government does not dispute this representation. Hatzimbes argues that "will never realistically" be able to pay the remaining balance on his restitution obligations. (Id. ¶ 7.) The court finds, however, that continuing the term of supervised release provides assurance that Hatzimbes will continue to pay restitution over the next year. Hatzimbes' inability to pay the entirety of the outstanding balance on restitution within the next year is not a consideration that warrants early termination of his term of supervised release.

### C. Whether early termination is warranted and in the interest of justice

In support of his motion, Hatzimbes asserts that he "has abided by all conditions of supervised release…[and] has had no violations and has steadily and readily paid restitution as required."  (Crim. Action No. 12-262, ECF No. 562 ¶ 4; Crim. Action No. 15-63, ECF No. 191 ¶ 4.) Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is *required* behavior while serving a term of supervised release. United States v. Banks, No. 04-176, 2015 WL 926534, at *4 (W.D. Pa. Mar. 4, 2015) (citing United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [the defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.")). The fact of compliance may very well mean that supervision is serving its deterrent and

rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community. For example, Hatzimbes is abiding by the law, gainfully employed, and satisfying his restitution obligations, which are all required by the sentences and conditions of supervised release imposed upon him by this court. Hatzimbes' conduct is commendable, but, considering the foregoing § 3553(a) analysis, especially the serious nature of his crimes, the need to deter criminal conduct, and the variance in the term of imprisonment granted to him at the time of sentencing, the interests of justice are best served by him completing his term of supervised release.

## IV.   Conclusion

Based upon the foregoing, the court will deny the motion for early termination of supervised release (Crim. Action No. 12-262, ECF No. 562 ¶ 8; Crim. Action No. 15-63, ECF No. 191 ¶ 8.) without prejudice.

An appropriate order follows.


Dated: November 24, 2020                                  BY THE COURT:

                                                                      /s/ JOY FLOWERS CONTI
                                                                      Joy Flowers Conti
                                                                      Senior United States District Judge